United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10              SAN JOSE DIVISION

11

12   DEYANIRA BANUELOS on behalf of C.B.V.,        Case No. 5:12-CV-01961-LHK
     a minor,
13                                                 ORDER DENYING PLAINTIFF'S MOTION
                    Plaintiff,                     FOR SUMMARY JUDGMENT;
14                                                 GRANTING PLAINTIFF'S ALTERNATIVE
            v.                                     MOTION FOR REMAND; AND DENYING
15                                                 DEFENDANT'S CROSS-MOTION FOR
     CAROLYN W. COLVIN,[1] Acting                  SUMMARY JUDGMENT
16   Commissioner of Social Security,
                                                   [Re: ECF Nos. 16, 22]
17                  Defendant.

18

19

20

21          Plaintiff  Deyanira Banuelos ("Banuelos"), acting on behalf of her minor son, C.B.V.,

22   appeals a final decision of the Commissioner of Social Security denying C.B.V.'s application for

23   Supplemental Security Income ("SSI").  Before the Court are Banuelos's motion for summary

24   judgment or, in the alternative, for remand, and the Commissioner's cross-motion for summary

25   judgment, which have been fully briefed.  *See* ECF Nos. 16, 22, 25.  Upon consideration of the

26

27   _____

28   [1] Carolyn W. Colvin, the Acting Commissioner of Social Security, is substituted for her
     predecessor, Michael J. Astrue, as the defendant in this action.  *See* Fed. R. Civ. P. 25(d).

United States District Court
For the Northern District of California

1   briefing[2] and for the reasons set forth below, the Court DENIES Banuelos's motion for summary

2   judgment, GRANTS her alternative motion for remand, and DENIES the Commissioner's motion

3   for summary judgment.

4                                   **I. BACKGROUND**

5        C.B.V., a ten-year-old boy, was born in the United States in May 2003. Admin. R. ("AR")

6   191. Shortly after birth, he was diagnosed with cerebral palsy. AR 385. Although his upper

7   extremities have normal range of motion, AR 91, he has "lower extremities elasticity and shortened

8   Achilles tendon," AR 116. The cerebral palsy affects his gait – he turns his right foot in and walks

9   on his right toes rather than placing his right heel down. AR 127-28. In December 2007, when

10  C.B.V. was four years old, he had surgery to lengthen both Achilles tendons. AR 116. He received

11  other treatment over the following years, including Botox injections to his calves and hamstrings in

12  January 2009 followed by casts on both legs for two weeks, and additional Botox injections over the

13  following year. AR 371-77. He has received physical therapy. AR 377-81. He wears leg braces

14  day and night. AR 127-28.

15       On February 9, 2009, Banuelos applied for SSI on behalf of C.B.V., asserting disability as of

16  the date of his birth.[3] *Id.* The application was denied initially and upon reconsideration. AR 133-

17  35. An Administrative Law Judge ("ALJ") conducted hearings on July 9, 2010 and October 7,

18  2010. AR 82 - 132. The ALJ heard testimony from Banuelos, who was represented by counsel, and

19  from an independent medical expert. *Id.* On January 27, 2011, the ALJ issued a written decision

20  finding that C.B.V. is not disabled and thus is not entitled to SSI. AR 18-36. Banuelos sought

21  review, requesting that the Appeals Council consider an additional medical report prepared by Dr.

22  Louis Girling after issuance of the ALJ's decision. AR 5, 11. The Appeals Council accepted the

23  additional report and made it part of the record. AR 1-5. However, the Appeals Council concluded

24  _____

25  [2] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

26  [3] A claimant who demonstrates disability may receive SSI beginning the month after the month in
    which the application is filed. 20 C.F.R. § 416.335. Thus although Banuelos claimed that C.B.V.

27  was disabled commencing in May 2003, she actually was seeking benefits from March 2009
    onward. *See id.* The Commissioner may, however, consider a claimant's complete medical history

28  in evaluating a claim for SSI. *See* 20 C.F.R. 416.912(d).

ORDER DENYING PLAINTIFF'S MOTION FOR SJ; GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR
REMAND; AND DENYING DEFENDANT'S CROSS MOTION FOR SJ

that the report did not provide a basis for changing the ALJ's decision and it denied review, making the ALJ's decision the final decision of the Commissioner. *Id.* Banuelos now seeks judicial review of the denial of SSI. She requests that the Court grant her motion for summary judgment or, in the alternative, that the Court remand the matter to the Commissioner. The Commissioner has filed a cross-motion for summary judgment.

# I. LEGAL STANDARD

## A.      Standard of Review

This Court has the authority to review the Commissioner's decision to deny benefits. 42 U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

## B.      Standard for Determining Disability

SSI is available under Title XVI of the Social Security Act when an eligible claimant's income and resources do not exceed statutory maximums and the claimant is "aged, blind, or disabled" within the meaning of the statute. 42 U.S.C. § 1382(a). "An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

3

**United States District Court**
For the Northern District of California

ALJs apply a three-step sequential evaluation process to determine whether a claimant under the age of eighteen is disabled.  20 C.F.R. 416.924(a).[4]  At step one, the ALJ determines whether the claimant is performing "substantial gainful activity."  *Id*.  If so, the claimant is not disabled; if not, the analysis proceeds to step two.  *Id.*  At step two, the ALJ determines whether the claimant suffers from an impairment or combination of impairments that is severe.  *Id.*  If not, the claimant is not disabled; if so, the analysis proceeds to step three.  *Id.*  At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals an impairment in the Listings.  *Id.*  If not, the claimant is not disabled; if so, and if the impairment or combination of impairments meets the duration requirement, the claimant is found to be disabled.  *Id.*

### III. DISCUSSION

At step one, the ALJ determined that C.B.V. has not engaged in substantial gainful activity since the application date.  AR 21.  At step two, the ALJ determined that C.B.V. has a severe impairment: "mild cerebral palsy."  *Id*.  At step three, the ALJ determined that C.B.V.'s impairment does not meet, medically equal, or functionally equal an impairment in the Listings.  AR 23.  As a result, the ALJ found that C.B.V. is not disabled.  AR 36.

Banuelos asserts that the ALJ erred in concluding that C.B.V.'s cerebral palsy does not meet or medically equal Listing 111.07[5], which provides as follows:

111.07 Cerebral Palsy. With:

A. *Motor dysfunction meeting the requirements of* 101.02 or *111.06*; or

B. Less severe motor dysfunction (but more than slight) and one of the following:
   1. IQ of 70 or less; or
   2. Seizure disorder, with at least one major motor seizure in the year prior to application; or
   3. Significant interference with communication due to speech, hearing or visual defect; or
   4. Significant emotional disorder.

---

[4] Section 416.924 was amended twice after the ALJ issued her written decision but before the Appeal Council denied review.  *See* 76 FR 41685-01 (July 15, 2011); 76 FR 24802-01 (May 3, 2011).  The amendments did not alter the three-step sequential analysis.  *See id.*

[5] Banuelos does not challenge the ALJ's determination that C.B.V.'s cerebral palsy does not functionally equal Listing 111.07.

ORDER DENYING PLAINTIFF'S MOTION FOR SJ; GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR REMAND; AND DENYING DEFENDANT'S CROSS MOTION FOR SJ

**United States District Court**
For the Northern District of California

20 C.F.R. pt. 404, subpt. P, App. 1, Listing 111.07 (emphasis added).  Banuelos contends that

C.B.V. meets or medically equals Listing 111.07A[6] because he has cerebral palsy with motor

dysfunction meeting the requirements of Listing 111.06.  Listing 111.06 provides as follows:

> 111.06 Motor dysfunction (due to any neurological disorder).  *Persistent disorganization or deficit of motor function for age involving two extremities, which (despite prescribed therapy) interferes with age-appropriate major daily activities and results in disruption of*:
>
> A. Fine and gross movements; or
> B. *Gait and station*.

20 C.F.R. pt. 404, subpt. P, App. 1, Listing 111.06 (emphasis added).  "Documentation of motor

dysfunction must include neurologic findings and description of type of neurologic abnormality

(e.g., spasticity, weakness), as well as a description of the child's functional impairment (i.e., what

the child is unable to do because of the abnormality)."   20 C.F.R. pt. 404, subpt. P, App. 1,

111.00C.

The evidence in the record showed that C.B.V. suffers from motor dysfunction due to a

neurological disorder (cerebral palsy); the dysfunction affects two extremities (his legs); the

dysfunction involves "some spasticity" of the legs and impaired bilateral lower extremity motor

strength; and the dysfunction disrupts C.B.V.'s gait.  *See* AR 25.  However, the ALJ found that

C.B.V.'s deficit of motor function does not meet the requirements of Listing 111.06 because the

deficit is not persistent and it does not interfere with age-appropriate major daily activities.  *Id.*

**A.      Requirement That Deficit Be Persistent**

With respect to the requirement that the deficit of motor function be "persistent," the ALJ

concluded as follows:

> The claimant's representative also argued that there was evidence of spasticity and a crouched gait pattern, which satisfies that [sic] requirements of 111.06 and therefore, 111.07A.  However, treatment notes also show that Dr. Hart noted that the claimant's gait was only mildly crouched while Dr. Girling noted only "some spasticity."  Exhibit 19F.  *These medical findings do not rise to the level of demonstrating* <u>*persistent*</u> *deficit of motor function as they illustrate only a moderate deficit.*

AR 25 (underlining in original, other emphasis added).  Apparently, the ALJ believed that the term

"persistent" related to the *severity* of the deficit, as she concluded that the medical evidence does not

---

[6] Banuelos does not contend that C.B.V. meets or equals Listing 111.07B.

illustrate a "persistent" deficit but only a "moderate" one.  However, the word "persistent" is a

measure of *duration* rather than severity.  *See* Merriam-Webster's Online Dictionary http:// www.

merriam-webster. com/medical/persistent (last visited September 16, 2013) (defining "persistent" as

"1: existing or continuing for a long time . . . . 2: continuing to exist despite interference or

treatment.").  The record is clear that the deficit of motor function caused by C.B.V.'s cerebral palsy

has been present for, and will continue for, many years.  *See* AR 328-413.  Accordingly, the Court

concludes that the ALJ's finding that the deficit is not "persistent" is not supported by substantial

evidence.  This conclusion is not dispositive of Banuelos's appeal because, as is discussed above,

the ALJ also found that C.B.V.'s deficit of motor function does not meet the requirements of Listing

111.06 because it does not interfere with age-appropriate major daily activities.

**B.      Requirement That Deficit Interfere With Age-Appropriate Major Daily Activities**

The ALJ found that the deficit of motor function caused by C.B.V.'s cerebral palsy does not

interfere with age-appropriate major daily activities, observing that despite evidence of some deficit,

"it cannot be stated that [C.B.V.] is <u>unable</u> to walk or run."  AR 25 (underlining in original).  The

ALJ went on to state that, "[e]ven if he occasionally might fall, this is not the same as an inability to

perform the function of walking or running."  *Id*.  The ALJ noted that "while there was evidence that

the claimant fell down occasionally when walking and running, progress notes indicate that he was

able to walk on heels and toes, jump with both feet, skip with the left leg, step over obstacles,

tandem walk, kick a ball, ride a tricycle and climb on play structures."  *Id*.  The ALJ concluded that

those activities illustrated that C.B.V. does not have "an interference with his ability to attend to

major age appropriate activities of daily living."  *Id*.

Banuelos asserts that the deficit of motor function caused by C.B.V.'s cerebral palsy does

interfere with his age appropriate major daily activities.  She contends that the ALJ's contrary

finding is not supported by substantial evidence in the record but rather is the result of a failure to

weigh the medical evidence properly.  Specifically, Banuelos asserts that the ALJ should have

credited the opinions of two treating physicians, Dr. Louis Girling and Dr. Loren Davidson, over the

opinions of other treating and consulting physicians.

ORDER DENYING PLAINTIFF'S MOTION FOR SJ; GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR
REMAND; AND DENYING DEFENDANT'S CROSS MOTION FOR SJ

United States District Court
For the Northern District of California

### 1.     Legal Standard Applicable To Medical Evidence

When evaluating medical evidence, an ALJ must give a treating physician's opinion "substantial weight." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). "When evidence in the record contradicts the opinion of a treating physician, the ALJ must present 'specific and legitimate reasons' for discounting the treating physician's opinion, supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When a treating physician's opinion is not contradicted by another physician, the ALJ must provide "clear and convincing" reasons for disbelieving the treating physician. *Id.* at 1228 n.8. Here, the opinions of Dr. Girling and Dr. Davidson are contradicted by the opinions of other treating and consulting physicians. Accordingly, the ALJ need provide only "specific and legitimate" reasons for discounting the opinions of Dr. Girling and Dr. Davidson.

### 2.     Evidence That Was Before The ALJ

The relevant medical and non-medical evidence considered by the ALJ is summarized as follows:

#### a.     Mark Kraus, M.D. (Treating Physician)

In December 2007, Dr. Mark Kraus performed surgery on C.B.V. at Santa Clara Valley Medical Center to lengthen his Achilles tendons. AR 387-89. In the operation report, Dr. Kraus noted that C.B.V. had been diagnosed with "mild cerebral palsy" with "mild bilateral diplegia."[7] AR 388. C.B.V. had been walking on his tiptoes for several years, and his heel cord contractures did not respond to nonoperative treatment. *Id.*

#### b.     Dennis Hart, M.D. (Treating Physician)

In January 2009, C.B.V. began treatment at Shriners Hospital for Children ("Shriners"). Dr. Dennis Hart administered Botox injections to muscles in both of C.B.V.'s legs and then placed the legs in casts for two weeks. AR 271.

#### c.     Lawrence J. Manhart, M.D. (Treating Physician)

In April 2009, Dr. Lawrence Manhart, also at Shriners, followed up with C.B.V. to assess

---

[7] "Diplegia" is "paralysis of corresponding parts (as the legs) on both sides of the body." Merriam-Webster's Online Dictionary http:// www. merriam-webster. com/medical/diplegia (last visited September 16, 2013).

ORDER DENYING PLAINTIFF'S MOTION FOR SJ; GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR REMAND; AND DENYING DEFENDANT'S CROSS MOTION FOR SJ

United States District Court
For the Northern District of California

1  progress from the Botox injections and casting prescribed by Dr. Hart.  AR 304.  Dr. Manhart noted

2  that C.B.V. "is an independent ambulator" and that he "was able to walk and run up and down the

3  hall today without much difficulty."  AR 304-05.  He stated that C.B.V. caught his right toe a bit

4  while running, but that he "had good heel-toe progression on the left and was actually also able to

5  get the right heel down pretty well."  AR 305.  Dr. Manhart continued to follow C.B.V.'s progress

6  over the following months.  AR 344-51.  During that time, both Dr. Hart and Dr. Manhart

7  prescribed and administered additional Botox injections.  AR 344-56.  In February 2010, C.B.V.

8  was measured and molded for solid bilateral ankle/foot orthotics.  AR 344.

9             **d.     Elisa C. Yao, M.D. (Treating Physician)**

10             Dr. Elisa Yao saw C.B.V. at Shriners in December 2009 for follow-up to Botox injections.

11  AR 357-58.  She reported that he was able to "walk stably," although he had a tendency to have the

12  right toe point in.  AR 357.  She noted that he was not wearing his orthotics, but that his parents

13  reported that he did wear them regularly.  *Id.*  Finally, she opined that "[o]verall, [C.B.V.] has been

14  doing well.  He continues to be active.  He is able to walk and run well."  *Id.*

15             **e.     Loren Davidson, M.D. (Treating Physician)**

16             Dr. Loren Davidson worked at Shriners and also followed up with C.B.V. following Botox

17  injections.  *See* AR 345.  In May 2010, Dr. Davidson completed a questionnaire indicating that

18  C.B.V. has "mild diplegic cerebral palsy but spasticity of the bilateral lower extremities meets

19  criterion of [Listing] 111.07A."  AR 385.

20             **f.     Christina Spangberg (Physical Therapist)**

21             Christina Spangberg, a physical therapist, saw C.B.V. regularly from March 2009 through

22  March 2010.  AR 371-76.  In a report covering March through December 2009, Ms. Spangberg

23  indicated that C.B.V. "has improved his muscle strength and balance.  His ambulation is improved

24  with heel to toe progression compared to foot flat."  AR 380.  She observed that he continued to

25  stand with his right foot turned in, but not as much as previously.  AR 378.  She noted that with

26  braces and shoes, he demonstrated increased control of the heel to toe transition bilaterally.  AR

27  379.  However, his "in-toeing increases" when he runs.  *Id*.

28             Later treatment notes from March 2010 indicated that C.B.V. had reported "that playing and

ORDER DENYING PLAINTIFF'S MOTION FOR SJ; GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR
REMAND; AND DENYING DEFENDANT'S CROSS MOTION FOR SJ

United States District Court
For the Northern District of California

1  walking has become more difficult since the Botox." AR 371.  He also complained of pain in his

2  left foot when walking.  *Id*.  Ms. Spangberg noted a marked decrease in right calf strength which she

3  attributed to Botox injections, but observed that C.B.V. responded well to the therapy.  *Id*.

4                    **g.      Louis Girling, M.D. (Treating Physician)**

5         Dr. Louis Girling first saw C.B.V. in August 2010, when he prepared an assessment for

6  California Children's Services.  AR 407-09.  The assessment comprised a questionnaire and a

7  written report.  *Id*.  In the report, Dr. Girling related C.B.V.'s history as told to him by Banuelos at

8  the appointment, and also reviewed C.B.V.'s medical history, including the 2007 surgery performed

9  by Dr. Kraus, the series of Botox injections at Shriners, and physical therapy that C.B.V. had been

10 doing.  AR 407.  Based upon this information, Dr. Girling concluded that C.B.V. had "increased his

11 ankle range, increased his speed for walking, increased his truncal strength and alignment and now

12 has improvement in his heel-to-toe progression."  AR 408.  Dr. Girling observed spasticity

13 bilaterally, that C.B.V. tends to hold his right foot in inversion, and that his gait is "somewhat

14 crouched."  *Id*.  He stated that C.B.V. was "able to achieve a tandem heel-to-toe gait with

15 concentration."  *Id*.  Dr. Girling's assessment was "[c]erebral palsy, spastic diplegia with an

16 abnormal gait as noted."  *Id*.  He expressed concern about "asymmetry in mobility about the hips"

17 and ordered an x-ray of the hips.  AR 408-09.  He also prescribed new hinged orthotics rather than

18 the fixed orthotics that C.B.V. was using.  AR 409.

19        In the questionnaire, Dr. Girling opined that C.B.V.'s condition meets Listing 111.07A.  AR

20 401.  He stated that C.B.V. "requires braces to maintain foot and ankle alignment and achieve near

21 normal progression during ambulation."  *Id*.  He also stated that C.B.V. "falls frequently because of

22 inturning of his right foot, which causes him to trip."  *Id*.

23                    **h.      Woodrow W. Jenese, M.D. (Consulting Physician)**

24        Dr. Woodrow Jenese, a board-certified neurosurgeon and independent medical expert,

25 testified at the hearing at the request of the ALJ.  Dr. Jenese stated that he had reviewed C.B.V.'s

26 medical records and that in his opinion C.B.V.'s cerebral palsy did not meet or equal Listing

27 111.07A.  AR 92, 117-18.  When Banuelos's counsel pressed Dr. Jenese about why Dr. Girling

28 would have come to the opposite conclusion, Dr. Jenese stated that Dr. Girling's clinical

ORDER DENYING PLAINTIFF'S MOTION FOR SJ; GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR
REMAND; AND DENYING DEFENDANT'S CROSS MOTION FOR SJ

United States District Court
For the Northern District of California

1   observations apparently described things that Dr. Girling believed were significant to a Listing

2   determination, but that those observations did not show that C.B.V. met the Listing.  AR 124.  Dr.

3   Jenese's position was that because C.B.V. could ambulate, he did not meet Listing 111.07A.  *Id*.  He

4   gave hypotheticals about conditions that would meet Listing 111.07A, including a child that is in a

5   wheelchair or has severe scoliosis.  *Id*. at 124-25.

6                           **i.      Banuelos (C.B.V.'s Mother)**

7        Banuelos testified that C.B.V. "walks crooked" and "falls down very frequently."  AR 99.

8   She said that C.B.V. complained "that it hurts him to walk and that he gets tired too much."  AR

9   100.  She stated that he has gotten a little better with treatment, but that he was "not a normal child"

10  and that it was very difficult making him wear the leg braces and taking him to so much therapy.

11  AR 101, 102.

12                         **j.      Shirley Veloro (C.B.V.'s Teacher)**

13       Shirley Veloro, C.B.V.'s kindergarten teacher, submitted a questionnaire indicating that

14  although C.B.V. has "very bowed legs that affect his running/walking," he "seems to have found a

15  way to adjust to his condition."  AR 280.  Ms. Veloro noted that he runs and walks more slowly than

16  the other students.  *Id*.

17       **3.      ALJ's Determination**

18       The ALJ discussed all of the record evidence in detail.  She credited the opinion of Dr.

19  Manhart, who treated C.B.V. over the course of several months, over the opinion of Dr. Girling,

20  who saw C.B.V. on only one occasion prior to the close of proceedings before the ALJ.  AR 28.

21  Noting that Dr. Manhart's observations regarding C.B.V.'s progress were bolstered by Ms.

22  Spangberg's notes over the course of a year, the ALJ concluded that "Dr. Manhart and Ms.

23  Spangberg are more reliable in that there is a longitudinal record of treatment or interaction that is

24  lacking with Dr. Girling."  *Id*.  The ALJ commented that Dr. Girling's own clinical findings that

25  C.B.V. achieves "near normal progression during ambulation" when wearing braces undercut his

26  opinion that C.B.V.'s condition meets Listing 111.07A.  AR 27.  The ALJ speculated that Dr.

27  Girling may have been under the misimpression that a diagnosis of cerebral palsy is synonymous

28  with meeting the Listing, noting that Dr. Girling stated that C.B.V. had met Listing 111.07A as of

July 26, 2004, the date he first was diagnosed with cerebral palsy.  *Id.*

The ALJ also credited the opinion of the medical expert, Dr. Janese, who reviewed all available medical records and concluded that C.B.V. did not meet Listing 111.07A.  AR 28.  The ALJ found Dr. Janese's opinion to be consistent with the observations of Dr. Manhart, Dr. Yao, and Ms. Veloro.  *Id.*  As discussed above, Dr. Yao reported that C.B.V. was able to "walk stably," although he had a tendency to have the right toe point in, and Ms. Veloro reported that C.B.V. was able to walk and run but more slowly than the other children.

The ALJ discounted Dr. Davidson's opinion that C.B.V.'s condition meets Listing 111.07A, noting that Dr. Davidson stated that the Listing was met at C.B.V.'s birth, and concluding that Dr. Davidson's opinion simply is inconsistent with numerous observations of C.B.V. being able to walk, run, hop, and play.  AR 28.

The ALJ acknowledged Banuelos's testimony that C.B.V. is not "normal," and her sadness about his condition, AR 27, but the ALJ found that although C.B.V. does have some deficit of motor function, it simply is not severe enough to interfere with age-appropriate major daily activities, AR 25.

The Court concludes that the ALJ articulated specific and legitimate reasons for failing to credit the opinions of Dr. Girling and Dr. Davidson.  Moreover, the Court concludes that as the record stood when the ALJ made her determination, the opinions of Dr. Manhart and Dr. Jenese, as supported by the opinion of Dr. Yao and the non-medical evidence from Ms. Spangberg and Ms. Veloro, constitute substantial evidence to support the ALJ's finding that C.B.V.'s condition does not interfere with age-appropriate major daily activities and thus does not meet or medically equal Listing 111.07A.

### 4.   Dr. Girling's Post-Hearing Report

In February 2011, shortly after the ALJ issued her unfavorable decisions, Dr. Girling prepared a report that was submitted to and made part of the record by the Appeals Council.  *See* AR 1-5, 412.  "[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the

ORDER DENYING PLAINTIFF'S MOTION FOR SJ; GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR REMAND; AND DENYING DEFENDANT'S CROSS MOTION FOR SJ

United States District Court
For the Northern District of California

1   Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec.*

2   *Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012). Thus this Court must determine whether adding

3   Dr. Girling's post-hearing report to the record changes its conclusion that the ALJ's decision is

4   supported by substantial evidence.

5         Dr. Girling's February 2011 report noted that C.B.V. continues to be followed by his

6   physical therapist, who has informed Dr. Girling that C.B.V. is "back up on his toes and has

7   decreasing range motion and decreased right single leg stance." AR 412. He also noted that

8   Banuelos had reported that C.B.V. now is falling nearly every day. *Id.* On physical examination,

9   Dr. Girling found that C.B.V. had a crouched gait with marked intoeing on the right even while

10  wearing his leg braces. *Id.* at 412-13. Dr. Girling opined that C.B.V. "has reverted back to an initial

11  contact on the toes on the right side," and to decreased ankle range of motion and decreased right

12  single leg stance. AR 412. He expressed concern that C.B.V. has not responded to repeated Botox

13  injections or to intensive physical therapy. AR 413.

14        The Court concludes that this report does change the mix of evidence such that it no longer

15  is clear that the ALJ's decision is supported by substantial evidence. Dr. Girling's February 2011

16  report, which is much more recent than Dr. Manhart's last report, indicates that C.B.V.'s condition

17  is regressing; it may be that the progress observed by Dr. Manhart has been lost. Moreover, Ms.

18  Spangberg's optimistic physical therapy notes, which the ALJ relied upon in reaching her decision,

19  are called into question by Dr. Girling's statement that the physical therapist (presumably Ms.

20  Spangberg) has noted that C.B.V. is back up on his toes and has lost range of motion. The report's

21  indication that C.B.V. is falling nearly every day presents different circumstances than were

22  addressed by the ALJ, who based her decision in part on the fact that C.B.V. fell only

23  "occasionally." *See* AR 25. Dr. Janese, the independent medical expert whose opinion was given

24  "significant weight" by the ALJ, *see* AR 28, has not had an opportunity to consider whether C.B.V.

25  might meet Listing 111.07A in light of the new information contained in Dr. Girling's February

26  2011 report.

27        Accordingly, the Court VACATES the ALJ's decision and REMANDS for further

28  proceedings, to include consideration of Dr. Girling's February 2011 report. *See Taylor v. Comm'r*

United States District Court
For the Northern District of California

ORDER DENYING PLAINTIFF'S MOTION FOR SJ; GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR REMAND; AND DENYING DEFENDANT'S CROSS MOTION FOR SJ

*of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (remanding to ALJ for consideration of new evidence of disability); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (remand generally is the proper course when a court reverses an agency determination).

### IV. ORDER

For the foregoing reasons, IT IS ORDERED THAT:

1. Plaintiff's motion for summary judgment is DENIED;

2. Plaintiff's alternative motion for remand is GRANTED;

3. Defendant's cross-motion for summary judgment is DENIED;

4. The ALJ's decision is VACATED; and

5. The matter is REMANDED to the Commissioner for further proceedings consistent with this order.

Dated:  September 17, 2013

_____
LUCY H. KOH
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

13
ORDER DENYING PLAINTIFF'S MOTION FOR SJ; GRANTING PLAINTIFF'S ALTERNATIVE MOTION FOR REMAND; AND DENYING DEFENDANT'S CROSS MOTION FOR SJ